924 F.2d 1053
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Farshad RAMAZANI, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Farzad RAMAZANI, Defendant-Appellant.
 Nos. 89-5904, 89-5905.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 5, 1990.
Decided Feb. 12, 1991.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis, III, District Judge. (CR-89-107-A)
 Alvin Ernest Entin, Entin, Schwartz, Margules & Lazarus, Miami, Fla., David Elliott Kenner, David E. Kenner Professional Law Corporation, Encino, Cal., for appellants.
 Bernard James Apperson, Assistant United States Attorney, Alexandria, Va., (Argued), for appellee; Henry E. Hudson, United States Attorney, Liam O'Grady, Assistant United States Attorney, Alexandria, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before DONALD RUSSELL and SPROUSE, Circuit Judges, and WILLIAM M. NICKERSON, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Before entering into a plea agreement with the government, two criminal defendants made motions to suppress evidence obtained from a court-authorized wiretap and for a continuance in order to take depositions of foreign witnesses. Both of these motions were denied by the district court, and the defendants now appeal these rulings. Finding no error below, we affirm.
 
 I.
 
 2
 On March 16, 1989, a federal grand jury sitting in the Eastern District of Virginia handed down a forty-one count indictment against twelve persons involved in a major drug distribution ring operating out of Ultimate Auto Body, Inc., in Alexandria, Virginia. Defendants Farshad and Farzad Ramazani were two of the twelve indicted, both being charged with conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine, conspiracy to distribute and to possess with intent to distribute opium, conducting a Continuing Criminal Enterprise in violation of 21 U.S.C. Sec. 848, and other substantive offenses.
 
 
 3
 The Ramazanis were arraigned on April 24, 1989, and entered pleas of not guilty. Thereafter, on May 19, 1989, they filed motions to suppress evidence derived from a supposedly illegal telephone wiretap, to request an evidentiary hearing concerning the information gleaned from the wiretap, and for a continuance to take the depositions of foreign witnesses. The court, on May 26, 1989, denied the motion for a continuance, and on July 21, 1989, it similarly denied the motions to suppress and for an evidentiary hearing. On this latter date, pursuant to a plea agreement, the Ramazanis pleaded guilty to conducting a Continuing Criminal Enterprise, and the government dismissed the remaining counts. On November 20, 1989, Farshad Ramazani was sentenced to twenty years' imprisonment and Farzad Ramazani received sixty months' imprisonment. The plea agreement specifically reserved defendants' right to appeal the denial of their motions to suppress and for a continuance, and this they now do.
 
 II.
 
 4
 On May 2, 1988, a judge of the United States District Court for the Eastern District of Virginia authorized a telephone wiretap of Ultimate Auto Body, Inc., then under investigation for being a front for a drug distribution ring. Additional requests to extend the original order were approved during the following five months. The Ramazanis now claim that these intrusions were illegal because the electronic surveillance authorized was unnecessary; defendants claim that the government's investigation had already identified most of the participants, had uncovered the methods of operation, and had amassed enough evidence to support indictments and convictions. As shown by the government's application for the initial wiretap, though, ordinary methods of surveillance and investigation, including the use of undercover agents, had uncovered little more than basic street level dealing. At the time of the initial application, the government had been unable to identify the source of supply of the drugs, the major kingpins of the distribution ring, the full extent of the conspiracy, or whether heroin was also being distributed.
 
 
 5
 An application for a wiretap must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. Sec. 2518(1)(c). Also, before issuing a wiretap order, the judge must determine that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. Sec. 2518(3)(c).
 
 
 6
 We have held that the showing of need made pursuant to these provisions must be "tested in a practical and commonsense fashion." United States v. Clerkley, 556 F.2d 709, 714 (4th Cir.1977), cert. denied, 436 U.S. 930 (1978) (citations omitted). Also, the government "need not exhaust every conceivable technique before making application for a wiretap." Id. at 715.
 
 
 7
 The case herein is closely analogous to Clerkley. There, at the time of the wiretap application, the government had identified four principals in an illegal gambling operation. We held, though, that:
 
 
 8
 While ample evidence may have been available to arrest and convict this foursome, the government is not precluded from carrying the investigation further. In particular, the government has a valid interest in uncovering the names and locations of various "backers," bookmakers who regularly "lay off" bets and thereby supply the organization with capital.
 
 
 9
 Id. at 714.
 
 
 10
 Quoting from a similar case, we then stated:
 
 
 11
 Plainly, normal investigative procedures had ceased to be effective once the visible members of the hierarchy, if one existed, were discovered. To suppose that the investigation should have terminated at this point is unrealistic. These men were merely the tip of the iceberg; they could always be replaced. In order to root out the offense, those who were ultimately responsible ... had to be found.
 
 
 12
 Id. at 714 (citation omitted).
 
 
 13
 Here, the wiretap application clearly set out that normal investigative techniques had been unsuccessful at discerning the source of supply of the drugs, who was actually in control of the operation, and the full extent of the conspiracy. Under these facts, we find that the district court did not err when it denied the motion to suppress.
 
 
 14
 The Ramazanis also appeal the July 1988 extension. They argue that this extension was not based on probable cause because only one relevant phone conversation was intercepted during the month encompassed by the June 1988 extension. The affidavit for the July extension, though, incorporated by reference the previous two affidavits, of May and June 1988, and we have held that "[w]here an affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant." United States v. Webster, 639 F.2d 174, 178 (4th Cir.), cert. denied, 454 U.S. 857 (1981) (citation omitted). We thus find that probable cause did exist for the July 1988 extension.
 
 III.
 
 15
 The Ramazanis' other issue on appeal concerns the denial of a continuance motion. Shortly after the defendants' arrest in California on February 16, 1989, they learned that the United States was seeking to indict them under the Continuing Criminal Enterprise statute. An element of this statute is that the government must show either that the defendant was an organizer, supervisor, or manager of a five-or-more person enterprise or that the defendant obtained "substantial income or resources" from the activity. 21 U.S.C. Sec. 848(b)(2). Local counsel had been retained by the Ramazanis by March 27, 1989, and at this time a motions date of May 12, 1989, and a trial date of May 30, 1989, were set. Discovery was delayed until April 1989, when defendants were removed to the Eastern District of Virginia, but the district court allowed defendants to file supplemental motions because of the shorter period of time they had in which to review the discovery material.
 
 
 16
 In May 1989, the defendants moved for a continuance so that their parents in Iran could be deposed as to the source of monies found to have been acquired by defendants. The government opposed this motion because it was made only days before the scheduled date for trial and the evidence would be, at best, relevant but of little materiality.
 
 
 17
 At this time, the government possessed records indicating that the Ramazanis had a Swiss and several Spanish bank accounts and that these were funded by money from the United States, specifically from bank accounts the Ramazanis had in California. Records found indicated that the funds in the Swiss account were sometimes sent to other exchanges in Europe and, in one case, to a bank in Iran, but there were no records indicating that money had come from Iran into Switzerland. Also, no records were found to indicate wire transfers from Iran into the California accounts. In addition to bank records, the government also possessed $143,443 in United States currency and numerous travellers checques, all grouped in clusters of $9,000, which had been confiscated from the Ramazanis and safe deposit boxes they controlled. Finally, the government mentioned that at trial it would produce witnesses, including co-conspirators, who would testify that the Ramazanis received hundreds of thousands of dollars in cash through their sale of cocaine.
 
 
 18
 After observing this evidence, and noting that the date set for trial was only four days away, the district court denied defendants' motion for a continuance. We find this not to have been an abuse of discretion.
 
 
 19
 Accordingly, the disposition of the case below is
 
 
 20
 AFFIRMED.